UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JACKSON,<br><br>    Petitioner,<br><br>    v.<br><br>KELLY SANTORO,<br><br>    Respondent. | No. 2:16-cv-2740 WBS GGH P<br><br><br>FINDINGS AND RECOMMENDATIONS |

*Introduction and Summary*

Petitioner was convicted of battery with serious bodily injury. The jury instructions required that the jury find that petitioner had committed the battery, and that serious bodily injury was incurred as a result of petitioner's application of force. The information required also that the jury find petitioner personally inflicted the great bodily injury for sentencing enhancement purposes (a seemingly duplicative finding in the circumstances of this case since no one else was alleged to have participated in the battery). Because petitioner had prior convictions, his maximum sentence could be enhanced to an indeterminate life term if he had convicted of a "serious" felony for purposes of the Three Strikes Law, which in his circumstances required a finding that for the *present battery conviction* petitioner had personally inflicted great bodily

1

harm.

It so happened that petitioner was convicted of Count 1 and several other counts not germane to this petition, but prior to the verdict being returned, petitioner had waived any jury trial with respect to the fact of prior convictions. Petitioner contends that the waiver of the jury findings on prior convictions did not waive the requirement that the jury find petitioner to have personally inflicted the requisite harm for the battery conviction.

Petitioner contends that the failure to obtain a jury finding on personal infliction was Apprendi/Blakely error and was not harmless.[1] For the reasons set forth below, the undersigned finds that any alleged failure to obtain a jury verdict on the personal infliction question was clearly harmless error. Given the clarity of this harmless error issue, especially in the AEDPA context, the undersigned need not decide the more difficult issue of whether under AEDPA there was an Apprendi/Blakely violation in the first instance. The petition should be denied.

*Background Facts*

Where possible, the undersigned will rely on the facts reported by the California Court of Appeal. With respect to the procedural context of the alleged error, the undersigned will also supplement the Court of Appeal findings.

 A. The Crime
  Prosecution Evidence
  In August 2011, Lavar Daniel and Michelle Warmsley were in a dating relationship.2 They had two daughters together and a stepson, Deshawn, from Michelle's prior relationship. Michelle's sisters, Diana and Tasha, had concerns about whether Daniel was abusive to Michelle and other family members. Tasha and defendant had a daughter together named Jailanie Jackson. At the time, Tasha and defendant were not dating but "maintained some sort of a relationship." In response to questioning by Diana and Tasha, Michelle denied any abuse by Daniel.

  During the day on August 4, 2011, Michelle spent time with her family in South Sacramento while Michelle styled Jailanie's hair. At 10:00 p.m., Daniel picked up Michelle and their children. As soon as Daniel began pulling the car

---

[1] Apprendi v. New Jersey, 530 U.S. 466 (2000) (any fact which increases a sentence beyond the statutory maximum must be found by a jury (unless waived); Blakely v. Washington, 542 U.S. 296 (2004) (facts underlying sentencing enhancements are jury trial matters unless jury trial is waived).

2

away from the curb, Michelle's brother, Terrell, drove in front of Daniel's and blocked him in. Terrell approached Daniel and told him to get out of the car so they could talk. Daniel rolled down his window slightly but refused to get out because Terrell seemed ready to fight. Daniel and Terrell had argued for about five minutes when defendant pulled his car behind Daniel's. Terrell appeared surprised at defendant's arrival.

Defendant went up to Daniel's window and told him to get out. Daniel remained in the car, but Michelle got out. Defendant went around the car, knocked Michelle over, and got into the front passenger seat. Michelle testified she saw defendant hiding a gun behind his back. Daniel does not remember anything that happened afterward.

Michelle and Deshawn testified Daniel asked defendant, "[W]hat are you doing?" Daniel tried to take off his seatbelt and get away when defendant began hitting him in the face. Michelle tried to help Daniel but was restrained by Tasha. Michelle eventually broke free and attempted to pull defendant out of the car. However, she managed to grab only defendant's shirt. As defendant was punching Daniel, the car started moving. The children were screaming in the backseat. Michelle saw the car crash and estimated it was going 25 to 30 miles an hour at impact.

Michelle ran over to find Daniel unconscious. Blood streamed from Daniel's mouth and he had difficulty breathing. Michelle tried to wake Daniel up while she dialed 911 for help.

A recording of the 911 call was played for the jury. During the call, Michelle reported Daniel was bleeding profusely and needed urgent help. She also stated Daniel had been attacked by an unknown assailant. In the background, Michelle argued with family members and accused them of spreading the lie that Daniel was abusive. Tasha responded she "didn't tell [defendant] to come over here." But Tasha also said Daniel was "putting his hands on" one of the boys in the family. At trial, Michelle stated Tasha told her: "I don't give a fuck, whoopty whoop whoop, [Daniel] got what he deserved."

Police officers and paramedics responded to the scene. Michelle told Police Officer Daniel Swafford that defendant attacked Daniel. To Officer Swafford, Daniel's injuries appeared consistent with assault. Daniel was transported to the hospital where he was admitted into the intensive care unit and placed on a ventilator. Tests showed he had multiple fractures in his jaw and damage to his submental nerve. Daniel underwent surgery and remained in the hospital for

3

approximately two weeks.

People v. Jackson, 2015 WL 4460745 *1-2 (Cal. App. 2015)

*Procedural Facts*

Again, the Court of Appeal sets forth the basic facts:

> Count one of the information charged defendant with violating section 243, subdivision (d), by committing a battery on Daniel that resulted "in the infliction of serious bodily injury on such person." Count one further charged Daniel was not an accomplice and defendant personally inflicted great bodily injury. The information gave notice the "offense is a serious felony within the meaning of ... Section 1192.7(c)." Subdivision (c)(8) of section 1192.7 includes among serious felonies "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice, or any felony in which the defendant personally uses a firearm."

The jury found defendant violated section 243, subdivision (d), by committing a "battery causing serious bodily injury upon Lavar Daniel." However, the jury was not asked to find defendant personally inflicted the injury.

While the jury was deliberating, defendant waived his right to a jury trial on his prior convictions during the following colloquy:

"THE COURT: All right. [Defendant], I have to take a personal waiver from you. You understand you have the right to have this jury make the decision about your priors; you understand that?

"THE DEFENDANT: Yes, Your Honor, I understand that."

Thus, the trial court "enter[ed] a waiver of the jury trial on priors should it become necessary."

After the jury convicted defendant of battery causing serious bodily injury, the trial court discharged the jury and conducted a bench trial that culminated in finding true the allegation of two prior strikes.

At sentencing, defendant's trial attorney stated he "would like to make a record that there was no finding of serious bodily injury by the jury." Defendant's attorney further stated, "I believe that my client would be constitutionally entitled to an actual finding of serious bodily injury. [¶] I bring that up because that affects not only the nature of the current conviction, but it also affects the credit situations

4

that would arise from his sentence." The People responded that "there is no evidence that there was an accomplice" or any evidence "that anyone committed the injuries on Lavar Daniel aside from the defendant."

The trial court explained: "We did talk about this at our prior meeting. And while I agree, and in the future will change this procedure, but it would have been helpful to have a special finding on the verdict form. We did not do that. [¶] But for clarity's sake, the defendant was charged as having personally inflicted injury, not as an aider or abettor or co-conspirator. It was clear on the charging document. Notice was given. There's no question from the evidence and the arguments and the instructions that were given and the charging document that the defendant, if guilty at all, was the perpetrator and not an aider and abettor. [¶] And, therefore, it certainly falls under 1192.7(c)(8)."

People v. Jackson, at *2-3.

As the Court of Appeal discussed, the jury was given correct notice of the requirements of the assault charge, Cal. Penal Code § 243(d), *i.e.*, that [petitioner] "personally inflicted serious bodily injured: RT 21. See also, Exhibit A to the Petition setting forth the Information as to the enhancement to Count 1:

> "'NOTICE: The above offense is a serious felony within the meaning Of Penal Code Section 1192.7 (c).'"
>
> Further, the victim, LAVAR DANIEL, was not an accomplice in this crime and the defendant personally inflicted the serious bodily injury, within the meaning of Penal Code Section 1192.7(c)(8).

The jury instruction later given to the jury was more truncated in terms of its elements:

To prove the defendant is guilty of this crime [Cal. Penal Code § 243(d)], the People must prove that:

1. The defendant willfully and unlawfully touched Lavar Daniel in a harmful or offensive manner; and
2. Lavar Daniel suffered serious bodily injury as a result of the force used.

\*\*\*

A serious bodily injury means serious impairment of physical condition. Such an injury may include, but is not limited to loss of consciousness and bone fracture.

5

The touching can be done indirectly by causing an object to touch the other person. RT 311.

The prosecutor emphasized in argument that petitioner had personally inflicted the harm causing the serious bodily injury by punching the victim in the mouth and hitting him in the face with a gun causing the victim to go unconscious and causing fractures. RT 325.

When it came to defendant's waiver of the right to jury trial on the existence of priors, petitioner was advised by counsel that he was waiving jury trial "as to whether or not the priors as alleged are true." RT 378. The trial judge did not add anything to this description of what was being waived.

Defense counsel did make a specific objection that the jury had not made any finding under §1192.7 (c) (8) and that the assault conviction should be found as a § 1192.7 violation and not a § 667.5(b)-(i) violation. RT 404. The trial judge responded: "In this case there is no evidence that there was an accomplice. There's no evidence that anyone committed the injuries on Lavar Daniel aside from this defendant". RT 405.[2]

*Discussion*[3]

A. <u>Legal Background to the Alleged Error</u>

As set forth in the summary, the undersigned will not endeavor to find the existence of <u>Apprendi/Blakely</u> error, but rather assuming the error, whether it was harmless. However, the background to the alleged error is necessarily discussed to place the harmful error discussion in the proper context. As set forth above, the assault with serious bodily injury charge, § 243(d), was to be enhanced with a finding that the assault charge was a "serious felony" pursuant to section 1192.7 (c)(8) (personal infliction of great bodily injury). As petitioner briefs: "In order to fall within the "25 years to life" provisions of the Three Strikes Reform Law, the prosecution had

---

[2] The defense did not submit any evidence that the victim's injuries were caused by any other force or person. Counsel did ask the jury to use its common experience from watching car crash dummy commercials to find that the most serious injuries were caused by the car crash occurring after the victim regained semi-consciousness, drove off and crashed, setting the air bag off. RT 353.

[3] The undersigned will dispense with the usual boilerplate AEDPA standards as they do not significantly impact the final harmless error determination.

6

to prove the current offense[ the assault charge] was either a 'serious felony' under Penal Code section 1192.7, subdivision (c), or a 'violent felony' under Penal Code section 667.5, subdivision (c). (Penal Code section 1170.12, subdivision (c)(2)(C)." Petition Memorandum at 7. A serious felony, with two prior felony convictions could result in an indeterminate sentence with a 25 year minimum. Cal. Penal Code § 1170.12 (c)(2)(A)(ii) and (c)(2)(C)(iii). As petitioner and respondent point out, if the conditions precedent for the life sentence were not met, petitioner would be sentenced as a "two striker," i.e., no indeterminate life sentence. To make a convoluted sentencing discussion short, given petitioner's prior convictions, the jury had to find that petitioner personally inflicted great bodily harm in the instant assault charge to obtain the Three Strikes sentence he did receive.

No party disputes that Apprendi/Blakely required a jury finding of personal infliction of great bodily injury-- in the absence of valid waiver.

The Court of Appeal found that under California law, People v. Arnett, 139 Cal.App.4th 1609 (2006), "serious bodily injury" in the assault section, 243(d), equated with "great bodily injury" found in the enhancement section: "As *Arnett* notes, it is well established the terms 'serious bodily injury' and 'great bodily injury' are essentially synonymous." People v. Jackson at * 3. The undersigned can have no quarrel with this exposition of California law. Hicks v. Feiock, 485 U.S. 624, 629-630 (1988).

But the further finding by the Court of Appeal in petitioner's case, that pursuant to California law, a waiver of a jury trial on prior convictions necessarily included a waiver of the "personally inflicted great bodily injury" required by the enhancement section in the Information is much more problematic in the AEDPA context. See People v. Jackson, at *4.

First, this "extra" waiver was not explained to petitioner. As set forth above, petitioner was counseled that he was only waiving a jury trial as to the existence of prior convictions. Waivers of constitutional rights are strictly construed, Johnson v. Zerbst, 304 U.S. 458, 464 (1938); Adams v. United States ex rel McCann, 317 U.S. 269, 275, 276 (1942) (jury trial); see also, U.S. v. Cochran, 770 F.2d 850, 852 (9th Cir. 1985) (jury trial right). This requirement in the context of the Sixth Amendment right to jury trial was arguably not met here in the situation

where petitioner inferentially was also held to have waived jury trial on the "personal infliction" requirement of the enhancement contained in the Information. That is, it does not appear to be an "intelligent" waiver.

Secondly, although this court is generally bound by exposition of state law, it is not so bound when the interpretation of state law is illogically construed in such a way to simply avoid federal requirements. Mullaney v. Wilbur, 421 U.S. 684, 691 n.11 (1975); Powell v. Ducharme, 998 F.2d 710, 713 (9th Cir. 1993) (untenable or veiled attempt to avoid federal constitutional law); Oxborrow v. Eikenberry, 877 F. 2d 1395, 1399 (9th Cir. 1989); Mendoza v. Solis, 2008 WL 1925012 *6 (E.D. Cal. 2008). The undersigned has difficulty here from a federal perspective in accepting the state law-- that a waiver of jury trial on the existence of priors is also a waiver of the requirement that the jury find the elements of an enhancement true-- because the waiver of a jury trial on the simple existence of prior convictions is illogically connected to a waiver of a requirement that the jury find whether the *instant charge* would qualify as a serious felony.

But the undersigned need not dwell further on his doubts as there can be no doubt that any error here was harmless.

### B. Harmless Error

An Apprendi/Blakely error is not structural error, and is subject to a harmless error analysis:

> Butler is entitled to relief only if the sentencing error in his case is not harmless. *See Washington v. Recuenco*, 548 U.S. 212, 126 S.Ct. 2546, 2552, 165 L.Ed.2d 466 (2006) (holding that sentencing errors are subject to harmless error analysis). Applying *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), we must determine whether "the error had a substantial and injurious effect on [Butler's] sentence." *Hoffman v. Arave*, 236 F.3d 523, 540 (9th Cir.2001) (internal quotation marks omitted*).* Under that standard, we must grant relief if we are in "grave doubt" as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt. *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). Grave doubt exists when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* at 435., 115 S.Ct. 992.

Butler v. Curry, 528 F.3d 624, 648 (9th Cir. 2008).

Here, the jury was instructed to find for the assault charge itself, *and did find*, that

8

*petitioner* had inflicted serious bodily injury. There was no evidence to the contrary. Although the jury could have found that the beating did not cause all of petitioner's injury, i.e, the subsequent car crash caused some of the facial damage, it was not open to the jury under the instructions and argument to find that petitioner's serious bodily injury was caused by a force distinctly separate from petitioner's beating of the victim.[4] The fact that serious bodily injury could accrue from each of two separate causes, one of which includes petitioner's actions, does not insulate petitioner from a verdict that he caused serious bodily injury. That is, a subsequent cause of great bodily injury could simply be additive to an already great bodily injury caused by petitioner. And, equating serious bodily injury with great bodily injury, as California does, means that in the circumstances of *this* case, the jury, already having made a finding that petitioner caused serious bodily injury, would simply have been making a duplicative finding that petitioner caused great bodily injury.[5]

Since the error is harmless under any analysis, it is certainly harmless under the AEDPA standards. See Harrington v. Richter, 562 U.S. 86 (2011).

*Conclusion*

The petition should be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are

---

[4] That is, the jury would have been disobeying the instructions to find that the force of the car crash constituted *the* cause the serious bodily injury, but that because petitioner's actions precipitated that operative cause, petitioner could have been found responsible for causing the serious bodily injury. The jury is presumed to have followed the jury instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000).

[5] If there had been two assailants of the victim in this case, quite possibly the jury's second, personal infliction finding might have independent significance for each defendant.

9

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 4, 2018

/s/ Gregory G. Hollows
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE
